JEFFREY K. GARFINKLE (SBN 153496)
JOSEPH M. WELCH (SBN 259308)
BUCHALTER NEMER
A Professional Corporation
18400 Von Karman Avenue, Suite 800
Irvine, California 92612
Telephone: (949) 760-1121
Facsimile: (949) 720-0182
Email:  jgarfinkle@buchalter.com
        jwelch@buchalter.com

Attorneys for Secured Creditor,
Library Asset Acquisition Company, Ltd.

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CapCo Group LLC,<br><br>　　　　　Alleged Debtor. | Case No. 2:10-bk-19929-BR<br><br>Chapter: 11<br><br>**DECLARATION OF EVAN WARSHAWSKY IN SUPPORT OF LIBRARY ASSET ACQUISITION COMPANY'S MOTION TO:<br>(1) PROHIBIT TRUSTEE FROM USING CASH COLLATERAL; (2) SEQUESTER CASH COLLATERAL AND (3) PROVIDE ACCOUNTING OF ALL POST-PETITION RECEIPTS**<br><br>Date:    [to be scheduled]<br>Time:<br>Ctrm: |

I, Evan Warshawsky, declare and state under penalty of perjury as follows:

1.　　As to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from my review of Library Asset Acquisition Company, Ltd.'s ("LAAC") books and records, and if sworn as a witness, I could and would testify competently to the truth thereof.

BN 7474840v1

1

DECLARATION OF EVAN WARSHAWSKY

**Professional Background and Engagement by LAAC.**

2. I have approximately 25 years experience handling all aspects of accounting and finance for medium to large companies, including television, marketing and entertainment related industries.

3. During the period from December 2008 to October 2009, I worked with several of the alleged debtors[1] and related entities owned and/or controlled by David Bergstein ("Entertainment Entities") as either the Chief Financial Officer or as a financial consultant, assisting with various financial and operational matters as required. During that time period and as part of my responsibilities, I reviewed and became familiar with the business operations of the Entertainment Entities and the various agreements entered into by the alleged debtors and certain of its affiliated corporations. Among the agreements that I reviewed during this time period and became familiar with are (a) the various agreements with secured creditors, including D.B. Zwirn Special Opportunities Fund, L.P., a Delaware limited partnership ("DBZ"), and (b) the agreements with Warner Bros. Entertainment, Inc. ("Warner Brothers").

4. In October 2009, I stopped working for the Entertainment Entities.

5. During September 2010, I was engaged as a consultant for Library Asset Acquisition Company, Ltd. ("LAAC") and one of its corporate affiliates—Library Rights Company (UK). Among other items, my duties include assisting LAAC with enforcing its rights and remedies against its various borrowers and the holders of LAAC's collateral. I also serve as one of LAAC's custodians of books, records and files.

**LAAC's Books and Records and Exhibits to Lift Stay Motion.**

6. LAAC's books, records and files include various documents related to certain loans which LAAC acquired from March through June 2009. Such documents are maintained in the regular and ordinary course of LAAC's business.

---

[1] R2D2, LLC (Bk. Case No. 2:10-bk-19924-BR); (2) ThinkFilm, LLC ("ThinkFilm") (Bk. No. 2:10-bk-19912-BR), (3) CT 1 Holdings, LLC ("CT1") (Bk. No. 2:10-bk-19927-BR), (4) CapCo Group, LLC (Bk. No. 2:10-bk-19929-BR), and (5) Capitol Films Development, LLC, (Bk. No. 2:10-bk-19938-BR).

7.     As part of my duties, I have access to all documents related to LAAC's business. Prior to executing this declaration, I reviewed LAAC's records and am familiar with all the documents referenced in LAAC's Cash Collateral Sequestration Motion, filed concurrently.

8.     The documents attached as exhibits hereto are true and correct copies of the original documents maintained by LAAC in its records or documents recently provided to LAAC by the debtors. I am familiar with LAAC's ordinary and customary method and manner for the preparation and maintenance of business records. Further, I am very familiar with many of these documents as a result of my prior employment by or services provided to the Entertainment Entities.

### LAAC's Secured Loan against ThinkFilm, FPLAC, CapCo and CT1

9.     On or about March 2, 2007, ThinkFilm, FPLAC, LLC ("FPLAC"), and Zoopraxis Film Assets, LLC ("Zoopraxis," and collectively with ThinkFilm and FPLAC, the "Borrowers"), on the one hand, and Bernard National Loan Investors, Ltd. and Bernard National Senior Funding, Ltd. (collectively, "Lenders"), on the other hand, entered into an Amended and Restated Credit and Security Agreement ("ThinkFilm Secured Credit Agreement") wherein Lenders agreed to provide Borrowers a secured credit facility of Twenty-Nine Million Six Hundred Fifty Thousand Dollars ($29,650,000). As reflected in the underlying loan documents, Borrowers granted Lenders a first priority security interest in substantially all of their assets. Under the ThinkFilm Credit Agreement, D.B. Zwirn Special Opportunity Fund L.P. ("DB Zwirn") was "agent for the Lenders."

10.     A true and correct copy of the ThinkFilm Secured Credit Agreement, as amended, was filed with the Court in the CT1 and ThinkFilm bankruptcy cases as exhibits 1, 2, and 8 to my declaration submitted in support of LAAC's lift stay motions. (*See* Docket Nos. 316 and 358 (*In re ThinkFilm*); Docket Nos. 304 and 349 (*In re CT1*)).

11.     After four amendments to the ThinkFilm Credit Agreement, the secured credit facility was increased to Forty-Five Million Seven Hundred Thousand Dollars ($45,700,000) ("ThinkFilm Credit Facility").

12. As security for Borrowers' obligations under the ThinkFilm Credit Facility, the Borrowers granted DB Zwirn, for the benefit of the Lenders, a security interest and lien in and to certain assets, which assets included, without limitation, all right, title and interest that the Borrowers had, if any, in and to certain motion pictures titles (the "Films"), including all personal property, tangible and intangible property owned and/or rights held by one or more of the Borrowers with respect to such Films (all such property together, the "Collateral"). The security interest granted by the Borrowers to DB Zwirn in and to the Collateral was perfected by a series of recorded copyright mortgages and UCC financing statements.

13. On or about July 11, 2007, CapCo, CT1 and certain other affiliated parties executed and delivered that certain "Second Amended and Restated Secured Continuing Guaranty" and "Second Amended and Restated Security Agreement" (collectively, the "CapCo/CT1 Secured Guaranty"). A true and copy of the CapCo/CT1 Secured Guaranty is attached hereto as Exhibit 1. Pursuant to section 2.6 of the CapCo/CT1 Secured Guaranty (and various related security agreements and documents), CapCo and CT1 granted DB Zwirn a security interest in all their respective assets.

14. LAAC's records reflect that DB Zwirn perfected its security interest against CapCo by, among other means, recording a UCC Financing Statement (the "CapCo Financing Statement") with the Delaware Secretary of State on July 12, 2007 (No. 2007-2644200). A true and correct copy of the CapCo Financing Statement is attached hereto as Exhibit 2.

15. Pursuant to the Tranche C Intercreditor Agreement between LAAC and DB Zwirn dated as of May 2009 (the "Intercreditor Agreement"), the security interest against CapCo and the CapCo Financing Statement inure to the benefit of LAAC as to (a) the films previously transferred to TFC Acquisition LLC ("TFC"), including *The In Laws*, *A Sound of Thunder*, *Ballistic: Ecks vs Sever*, and *The Whole Ten Yards*, and (b) all of CapCo's rights, if any, with respect to such films, and other collateral transferred to LAAC under the consummated tranches of the Note Purchase Agreement between LAAC and DB Zwirn.

16. A true and correct copy of the Intercreditor Agreement was filed with the Court in the CT1 and ThinkFilm bankruptcy cases as exhibit 10 to my declaration submitted in support of LAAC's lift stay motions. (*See* Docket Nos. 316 and 358 (*In re ThinkFilm*); Docket Nos. 304 and 349 (*In re CT1*)).

17. LAAC's records reflect that DB Zwirn perfected its security interest against CT1 by, among other means, recording a UCC Financing Statement (the "CT1 Financing Statement") with the Delaware Secretary of State on October 23, 2006 (No. 2006 63637498). A true and correct copy of the CT1 Financing Statement is attached hereto as Exhibit 3.

18. Pursuant to the Intercreditor Agreement, the security interest against CT1's assets and the CT1 Financing Statement inure to the benefit of LAAC as to both (a) the films previously transferred to TFC and (b) all CT1's rights, if any, with respect to such films, and other collateral transferred to LAAC under the consummated tranches of the Note Purchase Agreement between LAAC and DB Zwirn.

19. LAAC's records reflect that DB Zwirn perfected its security interest against ThinkFilm by, among other means, recording a UCC Financing Statement (the "ThinkFilm Financing Statement") with the Delaware Secretary of State on October 23, 2006 (No. 2006 63687449). A true and correct copy of the ThinkFilm Financing Statement is attached hereto as Exhibit 4.

**LAAC's Perfected Security Interest in "*The In Laws*" and "*A Sound of Thunder.*"**

20. On June 28, 2010 and more than three months after these bankruptcy cases commenced, Warner Bros. Entertainment, Inc. ("Warner Brothers") transferred by wire $8,752 and $15,781 into CapCo's bank account at Bank of America (account number ending 1741). A copy of the wire confirmation from Bank of America is attached to the Warshawsky Declaration as Exhibit 5. According to that wire confirmation, the $8,753 transfer was for the film "*A Sound of Thunder.*" And the $15,781 transfer was for the film "*The In Laws.*"

21. On August 10, 2010 and more than six months after these bankruptcy cases commenced, Warner Brothers transferred by wire $1,160 and $25,784 into CapCo's bank account at Bank of America (account number ending 1741). A copy of the wire confirmation from Bank of America is attached to the Warshawsky Declaration as Exhibit 6. According to that wire confirmation, the $1,160 transfer was for the film "*Ballistic: Ecks vs Sever*." And the $25,784 transfer was for the film "*The Whole Ten Yards*."

22. On or about August 20, 2002, Franchise Pictures, LLC ("FP"), Warner Brothers and certain other parties entered into a Purchase and Distribution Agreement with respect to "*The In Laws*" (the "*In Laws Distribution* Agreement").

23. On or about August 28, 2002, FP, Warner Brothers and certain other parties entered into a Purchase and Distribution Agreement with respect to "*A Sound of Thunder*" (the "*Sound of Thunder* Distribution Agreement").

24. With respect to the films "*Ballistic: Ecks vs Sever*" and "*The Whole Ten Yards*," FPLAC had similar distribution agreements with Warner Brothers.

25. On or about November 3, 2006, FPLAC acquired the majority of assets of Franchise Pictures and its bankrupt affiliates ("FP"), including all FP's rights in and to *The In Laws* and *A Sound of Thunder*. The rights under *The In Laws* and *A Sound of Thunder* Distribution Agreements were also transferred from FP to FPLAC.

26. In financing this acquisition, which is part of the ThinkFilm Loan, FPLAC granted DB Zwirn a security interest in all FPLAC's assets. LAAC's records reflect that DB Zwirn perfected that security interest by, among other means, recording a Copyright Mortgage and Assignment dated November 3, 2006 (the "Copyright Mortgage") with the United States Copyright Office ("USCO") on November 9, 2006. A copy of the Copyright Mortgage is attached to the Warshawsky Declaration as Exhibit 7. Schedule A to the Copyright Mortgage lists *The In Laws, A Sound of Thunder, Ballistic: Ecks vs Sever* and *The Whole Ten Yards* as films subject to the Copyright Mortgage.

27. Presently, LAAC is uncertain whether any other funds in the bank accounts of CapCo, CT1, or ThinkFilm are traceable to specific films (as is the case with the payments from Warner Brothers on account of *The In Laws*, *A Sound of Thunder*, *Ballistic: Ecks vs Sever* and *The Whole Ten Yards*). To the extent payments received by the debtors or the Trustee are traceable to a specific film registered with the USCO, LAAC is able to provide proof of DB Zwirn's perfected security interest in such payments.

**LAAC Acquired the ThinkFilm Loan.**

28. On or about June 8, 2009, and as part of the Note Purchase Agreement, LAAC acquired the loan and security interest whereby FPLAC granted DB Zwirn a security interest in all its assets. Concurrently therewith, DB Zwirn assigned the Copyright Mortgage to LAAC per that certain Assignment dated June 8, 2009 ("Copyright Mortgage Assignment"). A true and correct copy of the Copyright Mortgage Assignment, recorded at the USCO on June 17, 2009, is attached hereto as Exhibit 8.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. This declaration is made on October 25, 2010 in the County of Orange, State of California.

_____
EVAN WARSHAWSKY